**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| IN RE: DEPUY ORTHOPAEDICS, INC. PINNACLE HIP IMPLANT PRODUCTS LIABILITY LITIGATION | MDL No. 2244 |
| | Honorable Ed Kinkeade |
| *This Document Relates To:* | |
| *Andrews v. DePuy Orthopaedics, Inc., et al.* No. 3:15-cv-03484-K | |
| *Davis v. DePuy Orthopaedics, Inc., et al.* No. 3:15-cv-01767-K | |
| *Metzler v. DePuy Orthopaedics, Inc., et al.* No. 3:12-cv-02066-K | |
| *Rodriguez v. DePuy Orthopaedics, Inc., et al.* No. 3:13-cv-03938-K | |
| *Standerfer v. DePuy Orthopaedics, Inc., et al.* No. 3:14-cv-01730-K | |
| *Weiser v. DePuy Orthopaedics, Inc., et al.* No. 3:13-cv-03631-K | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO ALLOW LIVE
TRIAL TESTIMONY VIA CONTEMPORANEOUS TRANSMISSION**

**TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................................ 1

II.     GUIDANCE FROM THE MANUAL FOR COMPLEX LITIGATION ..................... 1

III.    THIS COURT HAS THE AUTHORITY TO PERMIT LIVE TESTIMONY
        BY CONTEMPORANEOUS TRANSMISSION FROM A
        REMOTE LOCATION ................................................................................................ 2

IV.     THIS COURT SHOULD EXERCISE ITS AUTHORITY TO PERMIT
        LIVE TESTIMONY BY CONTEMPORANEOUS TRANSMISSION
        FROM A REMOTE LOCATION IN THESE BELLWETHER TRIALS ..................... 3

        A.   Live Testimony Is Preferable to the Use of Depositions ..................................... 3

        B.   Courts Have Permitted Testimony by Contemporaneous
             Transmission for Over Two Decades ................................................................... 5

        C.   Remote Transmission Is Appropriate in This Case ............................................. 8

V.      PLAINTIFFS' PROPOSED ORDER PROVIDES APPROPRIATE
        SAFEGUARDS FOR THE USE OF CONTEMPORANEOUS
        TRANSMISSION ..................................................................................................... 13

VI.     CONCLUSION ......................................................................................................... 14

# TABLE OF AUTHORITIES

## CASES

*In re Washington Public Power Supply System Sec. Litig.*,
  MDL No. 551, 1988 WL 525314, *2 (W.D. Wa. Aug. 9, 1988) ................................4, 11, 12

*In re Vioxx Prods. Liab. Litig.*,
  439 F. Supp. 2d 640, 644 (E.D. La. 2006) ................................................................... *passim*

*Gulf Oil Corp. v. Gilbert*,
  330 U.S. 501, 511 (1947)........................................................................................................3

*Dagan v. CFC Group Holdings LTD*,
  No. 00-CV-2682, 2003 WL 22533425, at *2 (S.D.N.Y. Nov. 7, 2003)...................................6

*Edwards v. Logan*,
  38 F.Supp.2d 463 (W.D.Va.1999) ..........................................................................................9

*In re Actos (Pioglitazone) Products Liability Litigation*,
  No. 12-cv-00064, 2014 WL 107153 (W.D. La. Jan. 8, 2004) ........................................ *passim*

*In re San Juan Dupont Plaza Hotel Fire Litigation*,
  129 F.R.D. 424 (D.P.R. 1990)..............................................................................................5, 6


## RULES

FED. R. CIV. P. 43 ....................................................................................................................2, 4

FED. R. CIV. P. 45 ....................................................................................................................3, 13


## OTHER AUTHORITIES

Georg E. Kodek, *Chapter 13 Modern Communications and Information Technology and the
  Taking of Evidence*, 15 IUS Gentium 261, 266 (2012)...........................................................6

Gordon Bermant, *Courting the Virtual: Federal Courts in an Age of Complete Inter-
  Connectedness*, 25 Ohio N.U. L. Rev. 527, 528, 547 (1999) ..................................................6

MANUAL FOR COMPLEX LITIGATION (Fourth) (2004) ...................................................... *passim*

Martin Davies, *Bypassing the Hague Evidence Convention: Private International Law Implications of the Use of Video and Audio Conferencing Technology in Transnational Litigation*, 55 Am. J. Comp. L. 205, 205-206 (2007) ...............................................................6

## I.      INTRODUCTION

Plaintiffs Andrews, Davis, Metzler, Rodriguez, Standerfer, and Weiser respectfully request that this Court allow live trial testimony via contemporaneous transmission from locations outside Texas.  Plaintiffs seek to employ this procedure for certain witnesses that the Defendants may not voluntarily produce in Dallas, Texas or that cannot otherwise be compelled to attend trial in Dallas.

## II.     GUIDANCE FROM THE MANUAL FOR COMPLEX LITIGATION

The MANUAL FOR COMPLEX LITIGATION ("the Manual") encourages transferor judges to be innovative and creative to meet the needs of their cases.  MANUAL FOR COMPLEX LITIGATION (Fourth), Introduction & § 10.13 Effective Management (2004).  With mass tort litigation, the Manual specifically recognizes that the rules are still emerging or undergoing change.  *Id.* at Introduction.  Consequently, the Manual provides this instructive guidance:

> Much complex litigation, therefore, will take the judge and counsel into sparsely charted terrain with little guidance on how to respond to pressing needs for effective management. Practices and principles that served in the past may not be adequate, their adaptation may be difficult and controversial, and novel and innovative ways may have to be found.

*Id.*

Pursuant to the Court's Pretrial Procedures and the Special Master's request, Plaintiffs have identified or will identify individuals they anticipate calling at trial.  Many of these witnesses cannot be subpoenaed to trial in Texas and, in order to present live testimony, would need to be called through the procedure which forms the basis of the instant motion. In recognition of our judicial system, as well as the Court's preference for

live testimony, Plaintiffs seek leave to secure the live testimony through contemporaneous satellite transmission as described herein.

## III.   THIS COURT HAS THE AUTHORITY TO PERMIT LIVE TESTIMONY BY CONTEMPORANEOUS TRANSMISSION FROM A REMOTE LOCATION

The Federal Rules of Civil Procedure specifically authorize the Court to permit testimony by contemporaneous transmission from a remote location.  Rule 43 of the Federal Rules of Civil Procedure provides:

> For good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location.

FED. R. CIV. P. 43 (a).

As explained below, good cause exists here and the exemplar orders from *In re Actos (Pioglitazone) Products Liability Litigation*, MDL No. 2299, Docket Entry 3839, 3840, 3900 (attached as Exhibits 1, 2 and 3, respectively) provide appropriate safeguards for the use of such testimony.

If the Court permits testimony by contemporaneous transmission, the testimony may be compelled by subpoenaing the witness to an appropriate location within the boundaries specified in Rule 45 of the Federal Rules of Civil Procedure.  That rule provides:

> A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
>
> (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
>
> (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

2

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense."

FED. R. CIV. P. 45(c).

Thus, Plaintiffs would subpoena witnesses who cannot be compelled to appear in Texas to appear at a federal courthouse within 100 miles of where that person resides, is employed, or regularly transacts business, and the witness's testimony would be transmitted from that location to the trial in Dallas.

## IV.   THIS COURT SHOULD EXERCISE ITS AUTHORITY TO PERMIT LIVE TESTIMONY BY CONTEMPORANEOUS TRANSMISSION FROM A REMOTE LOCATION IN THESE BELLWETHER TRIALS

### A.   Live Testimony Is Preferable to the Use of Depositions

Allowing the contemporaneous transmission of these witnesses' live testimony speaks precisely to the judicial preference for live testimony and the concerns voiced in the Manual.   Live, in-person testimony has long been considered the gold standard during trial, as it permits the fact-finder to more accurately evaluate the witness's truthfulness while the courtroom setting exerts pressure for honesty.   *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 511 (1947), *superseded by statute on other grounds, as explained in American Dredging Co. v. Miller*, 510 U.S. 443, 449, n. 2 (1994) (stating that to locate a trial where litigants "may be forced to try their cases on deposition, is to create a condition not satisfactory to court, jury or most litigants"); *In re Vioxx Prods. Liab. Litig.*, 439 F. Supp. 2d 640, 644 (E.D. La. 2006) (calling live in-person testimony "optimal for trial testimony" (citing *Gulf Oil Corp., 330 U.S. at 511*); *In re Washington Public Power Supply System Sec. Litig.*, MDL No. 551, 1988 WL 525314, *2 (W.D. Wa. Aug. 9, 1988) ("[p]resentation of

3

witnesses under Court-controlled visual electronic methods provides a better basis for jurors to judge credibility and content than does use of written depositions); FED. R. CIV. P. 43 advisory committee's note (1996 amendment) ("The very ceremony of trial and the presence of the factfinder may exert a powerful force for truthtelling.").

Although live testimony in Texas is preferable, where it cannot be obtained, testimony via contemporaneous transmission provides many of the benefits conferred by live, in-person testimony that are lost in depositions. As is true with in-person testimony, testimony via contemporaneous transmission permits the fact-finder to "see the live witness along with 'his hesitation, his doubts, his variations of language, his confidence or precipitancy, his calmness or consideration.' *In re Actos (Pioglitazone) Prods. Liab. Litig.*, No. 12-cv-00064, 2014 WL 107153, at *8 (W.D. La. Jan. 8, 2014 (quoting *Vioxx*, 439 F. Supp. 2d at 644).

The Manual recognizes these benefits, stating that presenting live witness testimony via contemporaneous video transmission avoids some of the disadvantages of presenting such testimony using depositions. §12.334. Addressing in particular the disadvantages of relying on video depositions to present witness testimony, the Manual notes:

> The persuasive power of visual presentation carries with it the potential for prejudice, a risk heightened by the opportunities for manipulation. Rulings on objections are critical. Unless the parties can reach substantial agreement on the form and content of the videotape to be shown to the jury, the process of passing on objections can be so burdensome and time-consuming as to be impractical for the court.

*Id.* § 12.333.

The contemporaneous transmission of the live testimony of the witnesses is an option in the context of this MDL that would provide the jury the opportunity to 'see' each witness as he or she testifies, while minimizing the concerns using video depositions as voiced by the Manual. As recently discussed in the *In re Actos* MDL in the Fifth Circuit, there is a long schedule of discovery and trial inherent to MDLs which results in depositions being "recorded weeks or months earlier, prior to whatever developments might have occurred between the time the deposition was recorded and the time the testimony by video deposition is presented at trial." 2014 WL 107153, at *8. Live testimony allows the "witness and counsel to be responsive to the inevitable, unexpected developments and shifts" during trial, and allowed the witness to "comment on the newest developments in real time," unedited, for the jury to observe "as the trial unfolds." *Id.* Contemporaneous transmission of live testimony "better reflects the *fluid dynamic* of the trial [the jurors] are experiencing, and better serves the goal of 'truth telling.'" *Id.*

### B. Courts Have Permitted Testimony by Contemporaneous Transmission for Over Two Decades

Courts have permitted testimony via contemporaneous remote transmission for over two decades. For example, in the *In re San Juan DuPont Plaza Hotel Fire Litigation*, 129 F.R.D. 424 (D.P.R. 1990) multi-district litigation ("MDL") transferred to and set for trial in the District Court of Puerto Rico, Judge Acosta permitted the plaintiffs to present witnesses through a live satellite telecast who were under the defendants' control but beyond the court's subpoena power. 129 F.R.D. 424, 426 (D.P.R. 1990). In fact, the court

noted that satellite testimony by distant witnesses had previously been allowed in MDL 551, *In re Washington Public Power Supply System Securities Litigation*, and echoed the determination there that "a court has authority to ensure that a jury is provided with 'the best and most complete basis to evaluate evidence and witness credibility.' " *Id.; see also Dagan v. CFC Group Holdings LTD*, No. 00-CV-2682, 2003 WL 22533425, at *2 (S.D.N.Y. Nov. 7, 2003 (permitting five of a defendant's employees who resided in Hong Kong to testify by telephone); Martin Davies, *Bypassing the Hague Evidence Convention: Private International Law Implications of the Use of Video and Audio Conferencing Technology in Transnational Litigation*, 55 Am. J. Comp. L. 205, 205-206 (2007) (noting the increasing prevalence of "high tech" in courtrooms and ease of taking testimony from witnesses in remote locations, both foreign and domestic); Gordon Bermant, *Courting the Virtual: Federal Courts in an Age of Complete Inter-Connectedness*, 25 Ohio N.U. L. Rev. 527, 528, 547 (1999) (stating that "the virtual courthouse is inevitable (sic)" and noting the use of videoconferencing before appellate panels and in bankruptcy courts); Georg E. Kodek, *Chapter 13 Modern Communications and Information Technology and the Taking of Evidence*, 15 IUS Gentium 261, 266 (2012) (noting the increasing use of videoconferences to examine witnesses, particularly in the US, Australia, and Europe).

In *In re Vioxx Products Liability Litigation*, 439 F.Supp.2d 640, 643 (E.D. La. 2006), the court permitted the plaintiffs to elicit trial testimony by a Merck corporate officer via videoconference.[1]  *Id.* at 644.  Judge Fallon explained:

> [T]here has been an increasing trend by federal courts allowing and by legal commentators advocating for the use of contemporaneous transmission of trial testimony.  *See* Carolyn Hertzberg, *Clever Tool or Dirty Pool?: WPPSS, Closed Circuit Testimony and the Rule 45(e) Subpoena Power*, 21 ARIZ. ST. L.J. 275 (1989); Cathaleen A. Roach, *It's Time to Change the Rule Compelling Witness Appearance at Trial: Proposed Revisions to Federal Rule of Civil Procedure 45(e)*, 79 GEO. L.J. 81 (1990); *In re Washington Public Power Supply System Sec. Litig.*, MDL No. 551, 1988 WL 525314 (W.D. Wash. Aug. 9, 1988) (allowing testimony of witnesses through the use of contemporaneous transmission); *In re San Juan Dupont Plaza Hotel Fire Litig.*, 129 F.R.D. 424 (D.P.R.1989) (same); *Edwards v. Logan*, 38 F.Supp.2d 463 (W.D.Va.1999) (allowing entire trial to be conducted by contemporaneous transmission).

439 F.Supp. 2d at 642.  Judge Fallon also found support for testimony by contemporaneous transmission in the Advisory Committee Notes to Rule 43:

> Rule 43, itself, was specifically amended in 1996 to allow for the use of contemporaneous transmission (*citations omitted*).  Furthermore, the advisory committee's notes to the 1996 amendment of Rule 43 recognize the appropriateness of contemporaneous transmission in certain circumstances.

*Id.* at 642 (citation omitted).[2]  Judge Fallon likewise relied on the MANUAL FOR COMPLEX LITIGATION, which underscores the "permissibility and value of contemporaneous

---

[1] It is not clear from Judge Fallon's opinion whether the witness in question in the *Vioxx* case could be subpoenaed to the location from which the testimony would be transmitted.  Given the recent revisions to Rule 45 clarifying that subpoenas to party officers may command attendance only within 100 miles of the place where they live or work, or within the state where they live or work, *see* Rule 45(c)(1), Plaintiffs here intend to seek live remote testimony by contemporaneous transmission from witnesses who can be subpoenaed to the location from which their testimony will be transmitted.

[2] The Advisory Committee Notes for the 1996 amendment to Rule 43 specifically discussed how "[c]ontemporaneous transmission of testimony from a different location is permitted only on

transmission through the use of videoconferencing" outlined at § 12.334 (2004). *Id* at 642-43.

Additionally, in *In re Actos*, the district court relied on the Manual when approving the use of contemporaneous transmission of live testimony. The court considered the special representative nature of the bellwether trials in MDL proceedings as stated in the Manual for Complex Litigation concluding that:

> Consequently, the verdict in the bellwether trials…will be used in this representative manner, and therefore…should present the testimonial evidence of both sides as fairly and completely as possible.

2014 WL 107153 at *5-6 (in conclusion after quoting MANUAL FOR COMPLEX LITIGATION (Fourth) §22.315 (2004)). The court found further support for allowing contemporaneous transmission of live testimony when considering the nearness to the beginning of trial and the concern that counsel and the court would be tied up in taking depositions, making rulings on objections, and editing video depositions at such a critical point before trial. *Id*. at *7.

## C.    Remote Transmission Is Appropriate in This Case

As Judge Fallon explained, courts have generally used five factors to determine when testimony by contemporaneous transmission is appropriate.   439 F.Supp. 2d at

---

showing good cause in compelling circumstances. The importance of presenting live testimony in court cannot be forgotten. The very ceremony of trial and the presence of the factfinder may exert a powerful force for truth telling. The opportunity to judge the demeanor of a witness face-to-face is accorded great value in our tradition. Transmission cannot be justified merely by showing that it is inconvenient for the witness to attend the trial."

643 (*citing In re Washington Public Power Supply System Sec. Litig.*, 1988 WL 525314; *In re San Juan Dupont Plaza Hotel Fire Litig.*, 129 F.R.D. 424)[3].  The five factors are:

> (1) the control exerted over the witness by the defendant; (2) the complex, multi-party, multi-state nature of the litigation; (3) the apparent tactical advantage, as opposed to any real inconvenience to the witness, that the defendant is seeking by not producing the witness voluntarily; (4) the lack of any true prejudice to the defendant; and (5) the flexibility needed to manage a complex multi-district litigation.

*Id*.  As explained below, the application of these factors demonstrates that use of contemporaneous transmission from a remote location is appropriate here.

First, most of the witnesses Plaintiffs seek to call who cannot be compelled to testify in Texas are under the control of the Defendants.   There is no question that they control their current employees.   Additionally, many of Defendants' former employees and consultants whose names appear on Plaintiffs' witness list apparently have signed employment or consulting agreements with the Defendants or their affiliates.[4]

---

[3] The court in *In re Actos* did not rely on these five factors, citing facts unique to the circumstances such as a Scheduling Order which both parties agreed to and had previously abided by, and which had set forth a preference for producing witnesses at trial.  WL 107153 at *7.  Still, the court addressed each factor, stating why it did or did not apply to the circumstances before it.  *Id.*

[4] One such example of a consultant who signed agreements with DePuy in which he agreed to cooperate or provide assistance to DePuy in relation to the "assertion of rights", "Indemnification" or agreement to provide "additional services as requested by DePuy" in relation to regulatory, patent or infringement suits is Dr. Thomas P. Schmalzried, M.D..  In his 2001 Agreement, Dr. Schmalzried agreed to the following language:

> *12.1 DePuy agrees to indemnify and hold harmless Licensor from and against any third party claims for the injury to persons or property arising out of the distribution or use of the Products designed, manufactured and sold by DePuy as a result of this Agreement, to the extent that such third party claim is not found by a court of law to be attributable to, or arise from the negligence, fraudulent act or willful misconduct on the part of Licensor. In addition DePuy agrees to undertake the defense or Licensor against any such claims and to bear all costs and expenses, including reasonable attorneys' fees, incurred in*

---

*connection with the defense of any such claims. The foregoing shall not apply to any claim of medical malpractice alleged against Licensor.*

(See Schmalzried Depo. Ex. 3, DEPUY032961426-DEPUY032961443 at pages 5 and 8, attached here as Exhibit 4); and in his 1996 Consulting Agreement, Dr. Schmalzried agreed to the following:

*Consultant also agrees to use his best efforts to provide additional services as requested by DePuy and/or DDO. These services may include, but are not necessarily limited to assisting DePuy and/or DDO in the preparation of patent applications and in defending patent infringement suits relating to the Product, and rendering assistance in satisfying FDA and similar foreign regulatory requirements concerning the product.* (See Schmalzried Depo. Ex. 2, DEPUY062687689-DEPUY062687702, attached here as Exhibit 5).

Similar language exists in agreements for the following (as well as likely exists in agreements for which Plaintiffs are unaware): (1) Dr. Barrett (see language at DEPUY064663649; DEPUY032941184; DEPUY073661356; DEPUY052225243; DEPUY064708181; DEPUY032961645; DEPUY032937531; DEPUY064711045; DEPUY058701497 and BARR000000937); (2) Dr. Berry (see language at DEPUY032965393; DEPUY064695566; DEPUY064695766; DEPUY032956557; DEPUY064699048; DEPUY064697256; DEPUY032961859; DEPUY032961997; DEPUY064698919; DEPUY064711191-92; DEPUY064711274; and DEPUY064713482); (3) Dr. Brick (see language at DEPUY064695935-36; DEPUY052224245; DEPUY052229661; and DEPUY062688014); (4) Dr. Callaghan (see language at DEPUY032962682; DEPUY064700817-18; DEPUY064700880; DEPUY062688075-76; DEPUY064711517-18; DEPUY064663015; DEPUY064710387; DEPUY048019903; DEPUY064700595; DEPUY055701366; DEPUY032962529; and DEPUY032962538) (5) Dr. Engh Jr. (see language at DEPUY062686627; DEPUY062686636DEPUY062686637; DEPUY062688296; and DEPUY062688305-DEPUY062688306); (6) Dr. Fehring (see language at DEPUY064664775; DEPUY062688312-DEPUY062688314; DEPUY008225958; DEPUY008225969; DEPUY064702900;DEPUY064702911; DEPUY064712000; DEPUY064712011; DEPUY064708843-DEPUY064708845;DEPUY064702765-DEPUY064702767; DEPUY032963380-DEPUY032963381; and DEPUY064712088-DEPUY064712090) (7) Dr. Griffin (see language at DEPUY064663828; DEPUY064663466DEPUY064663468; DEPUY064696484; DEPUY064696495; DEPUY062688371; DEPUY062688382; DEPUY008225999; DEPUY008226007-DEPUY008226008; DEPUY010791283; DEPUY010791293; DEPUY062688398; DEPUY062688406-DEPUY062688407; DEPUY062688426; DEPUY062688436; and DEPUY032964090DEPUY032964091); (8) Dr. Haas (*see* language at DEPUY032944157; DEPUY032964132; DEPUY032964145; DEPUY025219626; DEPUY025219636; DEPUY032964175; DEPUY032964188; DEPUY032964270-DEPUY032964271; DEPUY032964222; DEPUY032964232; and DEPUY032964378-DEPUY032964379); (9) Dr. Wasielewski (see language at DEPUY064714908; DEPUY064714884; DEPUY064714919; DEPUY052226324-DEPUY052226325; DEPUY052226337-DEPUY052226338; DEPUY062688662-DEPUY062688663; DEPUY062688675DEPUY062688676).

Additionally, Plaintiffs have located approximately thirty Sales Representative Agreements with similar language included (*see generally* DEPUY03810464; DEPUY038104125; DEPUY038104080; DEPUY038104010; DEPUY041375124; DEPUY038103795; DEPUY038103913;

The language in these agreements, which may apply to more witnesses than Plaintiffs are currently aware, demonstrates additional control by Defendants, especially over Defendants' former employees and third-party consultants.

Second, as the *Vioxx* court noted, the need for live satellite testimony is heightened in the MDL context, where the venue is often not selected by the parties whose cases are being tried, nor tied to the defendants' home location. *See also In re Washington Public Power Supply System Securities Litigation* MDL, 1988 WL 525314, at *1 (finding remote transmission to be "an unusual, but undoubtedly inevitable, approach to management of multidistrict litigation."). Here, the September bellwether trial is intended to provide guidance in over eight thousand individual cases pending in this multi-district litigation. In addition, the bellwether plaintiffs are not from Texas and did not choose this forum. Consequently, the scope of this MDL likewise weighs in favor of allowing trial testimony by contemporaneous transmission.

Third, any opposition to allowing witnesses to testify remotely is for a purely tactical advantage, where Defendants have the ability to bring witnesses to trial. *See In re Washington Public Power Supply System Securities Litigation* MDL, 1988 WL 525314, at *1 (explaining that denying the plaintiffs the opportunity to present live testimony "would

---

DEPUY038103619; DEPUY038103734; DEPUY038103662; DEPUY038103555; DEPUY038103513; DEPUY038103949; DEPUY038103476; DEPUY038103437; DEPUY038103335; DEPUY038103362; DEPUY041375023; DEPUY038103221; DEPUY038103174; DEPUY038103079; DEPUY038102996; DEPUY038103021; DEPUY038102939; DEPUY038102906; DEPUY038102833; DEPUY038102796; DEPUY038102741; DEPUY038102671; DEPUY038102695; DEPUY038102625; DEPUY038102574; DEPUY038102540; DEPUY038102497; DEPUY038102467; and DEPUY038102382).

create a tactical procedural advantage for defendants based on factors out of plaintiffs' control.") Without the ability to present witnesses' live testimony at trial, Plaintiff's counsel would be required to spend time and expense deposing the witnesses and forced to present evidence in a format less-preferred than live testimony.

Fourth, Defendants would not suffer any prejudice in having these witnesses testify live by contemporaneous videoconferencing, especially given the convenience for the witness in appearing closer to home as opposed to traveling to Dallas. In *In re Vioxx*, the court was persuaded that the Defendant would not be prejudiced by contemporaneous videoconferencing because the witness was under its control and had already testified at depositions, thus the Defendant should not be surprised by the witness's testimony. 439 F. Supp. 2d at 643-44. The same is true here. Further, as noted in *In re Washington Pub. Power Sup. Sys.*, "[t]he trier of fact is entitled to the best and most complete basis to evaluate evidence and witness credibility. Where the expense is borne by the party utilizing the procedure, there is no prejudice to objecting parties." 1988 WL 525314 at *2.

Finally, considering the MDL bellwether trial dynamic, the fifth factor is essentially an extension of the second factor, supporting the use of videoconferencing in this bellwether trial. Videoconferencing allows the parties to secure live testimony from different locations, contemporaneously, while minimizing the inconvenience to those witnesses who might otherwise need to travel a considerable distance to participate briefly at the trial. In this MDL, the totality of these factors supports the use of contemporaneous testimony transmission via satellite. Furthermore, similarly to the

12

current litigation, the *Vioxx* order involved a "bellwether trial for a MDL involving thousands of lawsuits over the damage allegedly caused by a drug prescribed to millions of patients in every state of the nation," a fact Judge Fallon found to favor testimony via contemporaneous transmission.  439 F.Supp. 2d at 643.  Also, this exact procedure was recently granted, executed and witnesses appeared via contemporaneous transmission from remote courthouses during a recent Actos bellwether trial.  *In re Actos (Pioglitazone) Products Liability Litigation*, MDL No. 2299, Docket Entry 3839, 3840, 3900 (Exhibits 1, 2, and 3).

## V.   PLAINTIFFS' PROPOSED ORDER PROVIDES APPROPRIATE SAFEGUARDS FOR THE USE OF CONTEMPORANEOUS TRANSMISSION

If this Court allows the use of contemporaneous transmission, Plaintiffs intend to serve FED. R. CIV. P. 45 subpoenas on certain[5] witnesses[6] listed on their will-call witness list who reside outside Texas.  These subpoenas will command attendance at a location meeting the requirements of FED. R. CIV. P. 45(c)(1) (that is, within the state, or within 100 miles, of where each such witness lives or works), and the live testimony will be transmitted from that location to the courtroom in Dallas, Texas during trial.[7]

---

[5] Plaintiffs will continue to evaluate their witness list and may withdraw certain witnesses especially if it becomes obvious before (and even during) trial that their anticipated testimony is either duplicative and/or otherwise cumulative.  However, subpoenas will not be withdrawn without consultations with the court and opposing counsel.

[6] Primarily former DePuy and J&J employees and third party consultants involved in development of the Pinnacle hip.

[7] A witness so subpoenaed would still have a right to file a motion to quash the subpoena; such a motion is filed in the so-called "compliance court" - the district where compliance is commanded.  *See* FED. R. CIV. P. 45(d)(3).  But such motions may, in appropriate circumstances, be transferred to this Court.  *See* FED. R. CIV. P. 45(f).  As the Advisory Committee Notes explain,

The conditions under which such testimony would be given are set forth in detail in the orders used by Judge Doherty in the recent Actos MDL bellwether trial.  These are included as Exhibits 1, 2 and 3 for the Court's consideration and outline the safeguards anticipated by that MDL court including:

1. Testimony via secure video conferencing in a federal courthouse or alternate transmitting location as long as safeguards and requirements are met.

2. The witness will be visible to the jury at all times while testifying via the witness screen.

3. The witness hears all objections unless instructed by the Court.

4. Whenever feasible, documents or evidence will be shown to the witness electronically; if not feasible, documents will be handed to the witness by the court reporter at the Court or counsel's instruction.

5. Other than a court reporter, spectators and counsel will not be allowed in the room where the witness testifies.

6. The court reporter present will certify that no counsel were present in the room while the witness was testifying and confirm the hard copy versions of exhibits used (if applicable).

## VI.  CONCLUSION

For these reasons, Plaintiffs request that this Court allow live trial testimony via contemporaneous transmission from locations outside Texas for certain witnesses whom

---

"transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion". FED. R. CIV. P. 45, 2013 Advisory Committee Notes.  A subpoena issued to compel testimony already ordered by this Court would fall into this category.  The Advisory Committee Notes also state that consultation between the judge presiding over the case in the issuing court and the judge in the compliance district may be helpful.  *Id.*

the Defendants may not voluntarily produce in Dallas, Texas or cannot otherwise be compelled to attend trial in Dallas.

Dated:  August 26, 2016                  Respectfully submitted,

*Plaintiffs' Co-Lead Counsel:*
By: /s/ W. Mark Lanier
W. Mark Lanier
THE LANIER LAW FIRM
6810 FM 1960 Rd W
Houston, TX 77069-3804
Telephone: (713) 659-5200
Fax: (713) 659-2204
E-mail: wml@lanierlawfirm.com

Wayne Fisher
Justin Presnal
FISHER, BOYD, JOHNSON
  & HUGUENARD, LLP
2777 Allen Parkway, Suite 1400
Houston, Texas 77019
Telephone: (713) 400-4000
Fax: (713) 400-4050
E-mail: wfisher@fisherboyd.com
E-mail: justinp@fisherboyd.com

*Plaintiffs' Executive Committee on behalf of the*
*Plaintiffs' Steering Committee:*

Richard J. Arsenault
NEBLETT, BEARD & ARSENAULT
2220 Bonaventure Court
P.O. Box 1190
Alexandria, Louisiana 71301
Telephone: (800) 256-1050
Fax: (318) 561-2591
E-mail: rarsenault@nbalawfirm.com

Jayne Conroy
SIMMONS HANLY CONROY
112 Madison Avenue
New York, NY 10016
Telephone: (212) 784-6402
Fax: (212) 213-5949
E-mail: jconroy@simmonsfirm.com

16

## **CERTIFICATE OF SERVICE**

I certify that the foregoing instrument was served on counsel for the Defendants by the Court's ECF system and also by electronic mail on August 26, 2016.

*/s/ Justin Presnal*