## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| IN RE: DEPUY ORTHOPAEDICS, INC. PINNACLE HIP IMPLANT PRODUCTS LIABILITY LITIGATION | MDL No. 2244 |
| | Honorable Ed Kinkeade |

*This Document Relates To:*

*Andrews v. DePuy Orthopaedics, Inc., et al.*
No. 3:15-cv-03484-K

*Davis v. DePuy Orthopaedics, Inc., et al.*
No. 3:15-cv-01767-K

*Metzler v. DePuy Orthopaedics, Inc., et al.*
No. 3:12-cv-02066-K

*Rodriguez v. DePuy Orthopaedics, Inc., et al.*
No. 3:13-cv-03938-K

*Standerfer v. DePuy Orthopaedics, Inc., et al.*
No. 3:14-cv-01730-K

*Weiser v. DePuy Orthopaedics, Inc., et al.*
No. 3:13-cv-03631-K

### PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO QUASH SUBPOENA OF DR. HUDDLESTON AND FOR PROTECTIVE ORDER AND REQUEST FOR EXPEDITED CONSIDERATION

# Table of Contents

I.      BACKGROUND ................................................................................................ 1

II.     ARGUMENT .................................................................................................... 7

A.      Legal Standard ................................................................................................ 7

B.      Defendants Had Ample Opportunity to Obtain the Information Sought
        and Did Not Take Reasonable Steps to Avoid Imposing Undue Burden and
        Expense on Dr. Huddleston and Plaintiffs. ...................................................... 9

C.      A Second Deposition of Dr. Huddleston Would Be Unreasonably
        Duplicative and Unduly Burdensome. ........................................................... 13

III.    REQUEST FOR EXPEDITED BRIEFING SCHEDULE &   CONSIDERATION
        ........................................................................................................................ 18

IV.     CONCLUSION ............................................................................................... 18

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abdo v. Edison Chouest Offshore, L.L.C.,*
    CIV.A. 02-512, 2003 WL 396350 (E.D. La. Feb. 19, 2003)...........................................13, 18

*Ameristar Jet Charter, Inc. v. Signal Composites, Inc.,*
    244 F.3d 189 (1st Cir. 2001) ...............................................................................................16

*Briggs v. Phebus,*
    CIV.A. 12-2145, 2014 WL 1117888 (E.D. La. Mar. 19, 2014)..............................................7

*C & F Packing Co., Inc. v. Doskocil Companies, Inc.,*
    126 F.R.D. 662 (N.D. Ill. 1989) ..........................................................................................12

*Chauppette v. Northland Ins. Co.,*
    CIV.A. 08-4193, 2009 WL 3447291 (E.D. La. Oct. 21, 2009)...............................................7

*Chevron U.S.A. Inc. v. Aker Mar., Inc.,*
    CIV.A. 03-2027, 2007 WL 1558710 (E.D. La. May 30, 2007) .................................... passim

*Couch v. Wan,*
    CV F 08-1621 LJO DLB, 2012 WL 4433470 (E.D. Cal. Sept. 24, 2012) ..................9, 13, 18

*Cuthbertson v. Excel Industries, Inc.,*
    179 F.R.D. 599 (D. Kan. 1998)..............................................................................................9

*Dimitric v. Texas Workforce Commn.,*
    CIV.A. G-07-0247, 2008 WL 2630089 (S.D. Tex. June 30, 2008) ........................................8

*E.E.O.C. v. Honda of Am. Mfg., Inc.,*
    2:06-CV-0233, 2008 WL 440437 (S.D. Ohio Feb. 13, 2008)..........................................13, 18

*Exxon Ship. Co. v. U.S. Dept. of Int.,*
    34 F.3d 774 (9th Cir. 1994) ....................................................................................................8

*Fietz v. Southland Nat. Ins. Co.,*
    CIVA 05-0064, 2007 WL 1068486, at *2 (W.D. La. Apr. 5, 2007).............................9, 13, 18

*Graebner v. James River Corp.,*
    130 F.R.D. 440 (N.D. Cal. 1989) .................................................................................9, 18

*In re Polyester Staple Antitrust Litig.,*
    MDL NO. 3:03 CV 1516, 2007 WL 1232223 (W.D.N.C. Apr. 25, 2007)...........................18

*In Re: Ford Motor Co. Crown Victoria Police Interceptor Products Liability Litigation,*
  102CV15000, 2003 WL 22331285 (N.D. Ohio May 2, 2003) ......................................13, 18

*Kleppinger v. Texas Dept. of Transp.,*
  283 F.R.D. 330 (S.D. Tex. 2012) ...................................................................................9, 18

*Libertarian Party of Ohio v. Husted,*
  302 F.R.D. 472 (S.D. Ohio 2014) ........................................................................................16

*Lowery v. Noble Drilling Corp.,*
  CIV. A. 96-3968, 1997 WL 675328 (E.D. La. Oct. 29, 1997).......................................13, 18

*Misc. Dkt. Matter No. 1 v. Misc. Dkt. Matter No. 2,*
  197 F.3d 922 (8th Cir. 1999) ..........................................................................................8, 13

*Mitchell v. U. of Louisiana System,*
  CIV.A. 13-820-JWD, 2015 WL 1540532 (M.D. La. Apr. 7, 2015)................................13, 16

*MMG Ins. Co. v. Samsung Elecs. Am., Inc.,*
  293 F.R.D. 58 (D.N.H. 2013) ................................................................................................17

*Seymore v. Penn Mar., Inc.,*
  CIV.A. G-05-528, 2007 WL 101818 (S.D. Tex. Jan. 8, 2007) ................................8, 9, 13, 18

*Wiwa v. Royal Dutch Petroleum Co.,*
  392 F.3d 812 (5th Cir. 2004) ............................................................................................8, 9

*York v. Tropic Air, Ltd.,*
  CIV.A. V-10-55, 2011 WL 5827299 (S.D. Tex. Nov. 17, 2011) ..........................................9

OTHER AUTHORITIES

FED. R. CIV. P. 26 ...........................................................................................7, 8, 9, 10, 14, 18

FED. R. CIV. P. 30 ...............................................................................................9, 10, 14, 18

FED. R. CIV. P. 45 ...........................................................................................8, 9, 10, 14, 18

iii

Plaintiffs respectfully request that this Court quash Defendants' subpoena of Dr. Herbert Huddleston, M.D. and enter a protective order preventing Dr. Huddleston from being subjected to another deposition in this case.   As the subpoena has set Dr. Huddleston's second deposition for September 12, 2016, Plaintiffs request that the Court expedite consideration of their motion.

## I.BACKGROUND

As the Court is aware, the parties are in the midst of discovery for the upcoming bellwether trial, set to begin on September 26, 2016.   As part of this discovery, the parties have been deposing Plaintiffs' treating physicians.   These treating physicians are third parties and not subject to any party's control.   **Ex. 1** (8/15/16 Transcript) at 24:5-8, 41:19-23, 43:1-3; **Ex. 2** (8/19/16 Transcript) at 11:15 – 12:3.   The deposition of Dr. Herbert Huddleston, M.D., the implanting (but not revising) surgeon for Plaintiff Michael Weiser took place the afternoon of August 15, 2016.   **Ex. 3** (Huddleston Dep.); **Ex. 2** (8/19/16 Transcript) at 5:17, 23:22-25.   Defendants had the opportunity and ability to issue a subpoena to Dr. Huddleston prior to his deposition, but they chose not to do so.[1]

---

[1]   *See also* **Ex. 4** (8/1/16 Transcript) at 16:19 – 19:7 (discussing Defendants' ability to subpoena treating physicians for depositions); **Ex. 1** (8/15/16 Transcript) at 20:4-7 (regarding another treater deposition, the Special Master tells defense counsel: "Well, you know, I mean, it would seem to me you should probably serve him with a subpoena that says he has to stay from day to day until his examination is completed to cover yourself."), 20:19-20, 23:23-24 (with respect to Defendants wanting more time to depose a treating physician, the Special Master tells defense counsel to "just serve him with a subpoena"), 24:8-10 (same), 41:19 – 42:5 (Special Master: "Okay.   Well, I mean, the problem is, you know that the plaintiffs don't control these treating physicians.   I appreciate that they're scheduling it, and I don't think there's been too many reschedules over the course of the MDL.   But I think from your client's perspective you need to be serving subpoenas on these folks if – if you're going to claim that you're not able to prepare the case or you're not able to get your expert reports in or you're not ready to get ready for trial.   I think you need to serve a subpoena on them if you're going to – if you're going to complain about it."), 43:4-8 (Mr. Lanier: "And absolutely we've told Steve with any doctor he ought to go ahead and serve the subpoena because that's the control that anybody's got over the doctors, is serve the subpoena.   We've never opposed one subpoena that Steve has served."), 43:24 – 46:5; **Ex. 2** (8/19/16 Transcript) at 9:9-23, 13:15 – 14:1.

The morning of Dr. Huddleston's deposition, the parties participated in one of their weekly status conference calls with the Special Master. **Ex. 1** (8/15/16 Transcript). During that conference, Defendants' counsel, Stephen Harburg, raised the issue of the amount of time allocated for the depositions of treating physicians. *Id*. at 18:17 – 19:15. Mr. Harburg stated that the "**only** [treating physician] so far that plaintiffs have identified which might cause a problem" was Dr. Howe, the implanting and revising surgeon for Plaintiff Standerfer. *Id*. at 19:1-4 (emphasis added). Dr. Howe had indicated that he would only be available for three hours, which Mr. Harburg believed was not an adequate amount of time to depose a treating physician who implanted **and** revised **both** of the plaintiff's hip implants. *Id*. at 19:9-15.

Notably, Mr. Harburg raised no concerns regarding the deposition of Dr. Huddleston, which would take place later that day. **Ex. 1** (8/15/16 Transcript). Moreover, at one point during the conference Plaintiffs' counsel, Mark Lanier, clearly stated on the record:

> We don't anticipate asking questions at [Dr. Huddleston's] deposition, but we sure, absolutely may, and I'm not waiving that. And that decision will be made when we get there by whoever is going to take it.

*Id*. at 16:22-25. Mr. Harburg did not complain at that time that such a position was unfair or gamesmanship. **Ex. 1** (8/15/16 Transcript). On the contrary, when later asked whether he felt Plaintiffs' counsel was improperly influencing the treating physicians regarding the timing of their depositions, Mr. Harburg clearly stated: "**No, I don't,** Your Honor." *Id*. at 45:7-12 (emphasis added). *See also* **Ex. 2** (8/19/16 Transcript) at 8:19 – 9:23.

Just prior to the start of his deposition, Dr. Huddleston informed Mr. Lanier that he was available for four hours that day. **Ex. 2** (8/19/16 Transcript) at 34:25 – 35:3. Mr. Lanier informed defense counsel of this time limitation as soon as they arrived at the deposition. *Id*. at 4:11-14, 24:3-8, 34:25 – 35:15 (Mr. Lanier: "I did tell them when I found out this was a four-hour deposition. That's when I found out, right before the deposition

2

started, when I met with the doctor and he said he had four hours set aside. And I told them the second they walked in the room."). This amount of time (4 hours) was consistent with the amount of time used for the many other treating physicians' depositions conducted in this MDL. **Ex. 1** (8/15/16 Transcript) at 21:9-15, 22:8 – 23:11. The parties also agreed that the time would be split evenly between the two sides. **Ex. 3** (Huddleston Dep.) at 5:2-5, 20:23 – 21:1 (Mr. Conner: "Doctor, you have four hours to give us. Mr. Lanier gets two of those hours; I get two."); **Ex. 2** (8/19/16 Transcript) at 4:7-10, 8:5-7, 24:3-8, 24:12-21. This is also consistent with how the parties have handled such depositions in the past.[2] Defense counsel agreed to the 50/50 time split for Dr. Huddleston's deposition despite **knowing** that (i) Defendants had not served Dr. Huddleston with a subpoena,[3] and (ii) Mr. Lanier was not likely to ask Dr. Huddleston any questions.[4]

Mr. Lanier indicated to defense counsel that he would reserve any questions he might have for after Defendants' examination of Dr. Huddleston. **Ex. 3** (Huddleston Dep.) at 5:5-9; **Ex. 2** (8/19/16 Transcript) at 35:22 – 36:11. After some off-the-record internal discussion, Defendants' counsel agreed to go first. **Ex. 2** (8/19/16 Transcript) at 36:6-8. Michael Conner, counsel for Defendants, proceeded to question Dr. Huddleston for approximately 90 minutes. **Ex. 3** (Huddleston Dep.) at 5:11 – 113:5. Mr. Conner spent the vast majority of that time questioning Dr. Huddleston regarding (i) his conversations with Plaintiffs' counsel, (ii) the history of, and his experience with, metal—on-metal and

---

[2]   **Ex. 1** (8/15/16 Transcript) at 21:12-15, 22:12-17; **Ex. 2** (8/19/16 Transcript) at 4:7-10 (Mr. Quattlebaum: "When we arrived at the deposition, Mr. Lanier asked if we were proceeding under the **standard protocol that we've been following for depositions of a 50/50 split on time**, and I agreed that we were.") (emphasis added), 8:11-18, 24:3-8.

[3]   **Ex. 2** (8/19/16 Transcript) at 7:23-25; **Ex. 3** (Huddleston Dep.) at 5:1-2. The Special Master later noted to Defendants: "Maybe you shouldn't have cut that deal before you realized that you hadn't served a subpoena on him." **Ex. 2** (8/19/16 Transcript) at 8:8-10.

[4]   **Ex. 1** (8/15/16 Transcript) at 16:22-25.

metal-on-poly hip implants, and (iii) the differences between the ASR metal-on-metal hip implant and the Pinnacle metal-on-metal hip implant.[5]  Only a small portion of Mr. Conner's questioning directly related to Plaintiff Weiser.[6]  At one point during his questioning, Mr. Conner asked Dr. Huddleston if he had discussed with Plaintiffs' counsel whether he was willing to testify live at trial.  **Ex. 3** (Huddleston Dep.) at 21:9-13. Dr. Huddleston stated that he would be willing to do so.  *Id*. at 21:15-16.[7]

After approximately 90 minutes of questioning, Mr. Conner passed the witness, stating on the record his intention to reserve his final 30 minutes for re-cross after the completion of Mr. Lanier's questioning.  **Ex. 3** (Huddleston Dep.) at 113:3-5; **Ex. 2** (8/19/16 Transcript) at 5:2.  After consultation with co-counsel off the record, Mr. Lanier then stated, consistent with his representations during that morning's status conference,[8] that he would reserve his questions for trial.  **Ex. 3** (Huddleston Dep.) at 113:18-19; **Ex. 2** (8/19/16 Transcript) at 5:2-4, 27:20 – 28:3.  He noted, however, that he reserved his right to ask questions to the extent Mr. Conner questioned Dr. Huddleston any further during the deposition.  **Ex. 3** (Huddleston Dep.) at 113:20-22.[9]  In response, Defendants' counsel, Steven Quattlebaum, requested that they be allowed to use the remainder of their time (*i.e.*, 30 minutes) to question Dr. Huddleston.  **Ex. 3** (Huddleston Dep.) at 114:1-11; **Ex. 2**

---

[5]   Indeed, approximately 73.5 pages of the 115-page deposition transcript were devoted to these and related topics.  **Ex. 3** (Huddleston Dep.) at 5:12 – 11:5, 18:7 – 19:6, 20:23 – 79:23, 86:9 – 92:9, 93:11 – 96:1. *See also* **Ex. 2** (8/19/16 Transcript) at 25:24 – 27:1.

[6]   Approximately 35.5 pages of the 115-page deposition transcript were spent on questions directly related to Plaintiff Weiser.  **Ex. 3** (Huddleston Dep.) at 11:10 – 18:6, 19:7 – 20:22, 79:24 – 86:8, 92:11 – 93:10, 96:3 – 113:2.  *See also* **Ex. 2** (8/19/16 Transcript) at 27:7-22.

[7]   Prior to the start of the deposition, Mr. Quattlebaum asked Mr. Lanier whether Dr. Huddleston would be appearing live at trial.  **Ex. 2** (8/19/16 Transcript) at 4:14-15.  Mr. Lanier told Mr. Quattlebaum that he was not sure.  *Id*. at 4:15.  That statement was accurate at that time and it remains accurate now.  *Id*. at 25:9-23.  Plaintiffs have made no final decision as to whether or not they will call Dr. Huddleston live at trial.  *Id*. at 25:21-23.

[8]   **Ex. 1** (8/15/16 Transcript) at 16:22-25.

[9]   This was also consistent with his representations on that morning's status conference call.  **Ex. 1** (8/15/16 Transcript) at 16:22-25.

(8/19/16 Transcript) at 5:4-5, 28:4-5.   Both Dr. Huddleston and Mr. Lanier agreed to Mr. Quattlebaum's request.  **Ex. 3** (Huddleston Dep.) at 114:12, 114:19 – 115:4; **Ex. 2** (8/19/16 Transcript) at 28:4-5.   Mr. Lanier reiterated, however, that he may have questions for Dr. Huddleston after the conclusion of Mr. Conner's questioning and suggested that they may want to reserve a portion of their remaining time for rebuttal, should they wish to have that opportunity.   **Ex. 3** (Huddleston Dep.) at 114:19 – 115:3; **Ex. 2** (8/19/16 Transcript) at 5:5-6, 28:4-20.   After a brief discussion off the record, Mr. Quattlebaum unilaterally adjourned the deposition. **Ex. 3** (Huddleston Dep.) at 115:5-12; **Ex. 2** (8/19/16 Transcript) at 5:12-13.   Mr. Lanier then noted for the record that Dr. Huddleston was available to stay to continue his deposition for another 2 hours and 20 minutes, as originally planned. **Ex. 3** (Huddleston Dep.) at 115:22-24.   Defense counsel were aware that they could call the Special Master from the deposition to raise their concerns with him,[10] yet they chose not to do so. **Ex. 2** (8/19/16 Transcript) at 19:3-5, 32:1-6, 33:18 – 34:1. Instead, defense counsel chose not to use their additional 30 minutes and ended the deposition early. **Ex. 2** (8/19/16 Transcript) at 5:7-11, 22:7-18; **Ex. 3** (Huddleston Dep.) at 116:1.

On August 19, 2016, the parties participated in another status conference with the Special Master, during which Dr. Huddleston's deposition was discussed extensively. **Ex. 2** (8/19/16 Transcript).   Mr. Quattlebaum and Mr. Harburg provided the Special Master with a distorted and inaccurate characterization of the events. *See, e.g., id.* at 4:7 – 16:3, 18:13-24, 23:3 – 29:14.   Despite acknowledging that he had agreed to a 50/50 time

---

[10]   **Ex. 4** (8/1/16 Transcript) at 28:15-23 (the Special Master tells Mr. Harburg that if an issue were to come up during a treater deposition, he can "have [his] team call from the deposition . . ."); **Ex. 1** (8/15/16 Transcript) at 20:15-19; **Ex. 2** (8/19/16 Transcript) at 13:6-11 ("[I]f you think it would be helpful, call me during the deposition – we've done that a number of times in this case, sometimes for nonparties, sometimes for, you know, experts or corporate witnesses or some of the plaintiffs – and I'll address it."), 33:18 – 34:1.

split for treater depositions (including Dr. Huddleston's),[11] Mr. Quattlebaum had now changed his position, stating "there's no need to split the time 50/50 if the witness is coming live and has visited with the plaintiffs' counsel." *Id*. at 7:4-7.  In essence, defense counsel believes that they should have received most, if not all, of the 4 hours allotted for Dr. Huddleston's deposition, with Plaintiffs' counsel having little to no time for follow up questions. *Id*. at 7:4-11, 10:1 – 11:9.  Yet that was not what defense counsel agreed to. *Id*. at 4:7-10, 8:5-7, 8:11-18.  Moreover, Plaintiffs have not even decided at this point in time whether they plan to call Dr. Huddleston live at trial,[12] so defense counsel's accusations that Plaintiffs "knew they were calling him live" are untrue. *Id*. at 10:14-15, 25:9-23.  And, regardless, as Mr. Harburg conceded, Plaintiffs are not obligated at this time to tell Defendants which witnesses they will be bringing to trial. *Id*. at 21:16-19.

Mr. Quattlebaum informed the Special Master at the August 19 status conference that Defendants would need another **three** hours to question Dr. Huddleston. *Id*. at 5:25 – 6:2 (Mr. Quattlebaum: "And so the relief that we request is to go back and finish his deposition.  We need about three more hours with him.").  It is unclear whether Defendants expect to use the entire three hours for themselves, or whether this estimation includes the time allocated to Plaintiffs.  Mr. Quattlebaum then requested permission to file a subpoena to take a second deposition of Dr. Huddleston. *Id*. at 18:1-11.  The Special Master told him they could do so, although he acknowledged that Plaintiffs may have valid arguments against the second deposition. *Id*. at 18:12, 19:15-20, 20:2-5, 36:20 – 37:3. Mr. Lanier then stated on the record that Plaintiffs indeed opposed Defendants re-

---

[11]  *Id*. at 4:7-10 (Mr. Quattlebaum: "When we arrived at the deposition, Mr. Lanier asked if we were proceeding under the standard protocol that we've been following for depositions of a 50/50 split on time, and I agreed that we were."), 8:5-7 (Mr. Quattlebaum: "And [Plaintiffs] scheduled the deposition, arranged for it, and I made a deal with Mr. Lanier that we split it 50/50."), 8:11-18.

[12]  *Id*. at 25:21-23.

deposing Dr. Huddleston and would file a motion to quash any such subpoena.  *Id*. at 29:8-11.

One week later, on August 26, 2016, Defendants served Dr. Huddleston with a Subpoena to Testify at a Deposition and to Produce Documents, Information, or Objects in a Civil Action with attached Notice of Videotaped Deposition of Herbert Huddleston, M.D. and Duces Tecum (the "Subpoena").  **Ex. 5** (8/26/16 Letter).   Pursuant to the Subpoena, Dr. Huddleston was instructed to appear for deposition on September 12, 2016.  *Id*.  Defendants noted in their attached cover letter that they "anticipate that [they] will need approximately 2 ½ hours to complete [Dr. Huddleston's] deposition."  *Id*.  Again, it is unclear whether this time estimation is for defense counsel's own questioning, or whether it includes the time allocated to Plaintiffs' counsel.

## II.ARGUMENT

### A.    Legal Standard

Discovery is not limitless.  It has " 'ultimate and necessary boundaries[,]' " and it is well established that the Court has wide discretion in establishing the scope of discovery.  *Briggs v. Phebus*, CIV.A. 12-2145, 2014 WL 1117888, at *2 (E.D. La. Mar. 19, 2014) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).  As with all discovery, third-party subpoenas must fit within the scope of discovery provided in Rule 26(b)(1) and the limitations on discovery imposed by Rule 26(b)(2)(C).  *See Chauppette v. Northland Ins. Co.*, CIV.A. 08-4193, 2009 WL 3447291, at *1 (E.D. La. Oct. 21, 2009).  These limitations include that:

> the court **must** limit the frequency or extent of discovery otherwise allowed by these rules . . . if it determines that:
>
> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

7

(iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

FED. R. CIV. P. 26(b)(2)(C) (emphasis added).  The Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including [by] . . . forbidding the disclosure or discovery . . ." FED. R. CIV. P. 26(c)(1).  *See also Seymore v. Penn Mar., Inc.*, CIV.A. G-05-528, 2007 WL 101818, at *1–2 (S.D. Tex. Jan. 8, 2007) ("Rule 26(b)(2) confers considerable discretion upon a district court to limit discovery, especially where the party seeking discovery has already had "ample opportunity" to obtain the information sought, and the burden of the proposed discovery outweighs its likely benefit.").

In addition, as to subpoenas issued to nonparties,[13] Rule 45(d)(1) provides that "[a] party or attorney responsible for issuing and serving a subpoena **must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena**" and that the Court "must enforce this duty . . ." FED. R. CIV. P. 45(d)(1) (emphasis added). The Rule further provides that, "[o]n timely motion, the [Court] **must** quash or modify a subpoena that . . . subjects a person to undue burden."  FED. R. CIV. P. 45(d)(3)(A) (emphasis added).  "Whether a subpoena imposes undue burden generally raises a question of the subpoena's reasonableness, which 'requires a court to balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it.' " *Dimitric v. Texas Workforce Commn.*, CIV.A. G-07-0247, 2008 WL 2630089, at *1 (S.D. Tex. June 30, 2008) (citation omitted).  *See also Wiwa*, 392 F.3d at 818.

Finally, where, as here, the subpoena at issue seeks a second deposition of a person or party, leave of Court to conduct such a deposition should only be granted "to the extent

---

[13] "The Federal Rules . . . afford nonparties special protection against the time and expense of complying with subpoenas."  *Exxon Ship. Co. v. U.S. Dept. of Int.*, 34 F.3d 774, 779 (9th Cir. 1994).  *See also Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004); *Misc. Dkt. Matter No. 1 v. Misc. Dkt. Matter No. 2*, 197 F.3d 922, 927 (8th Cir. 1999) ("Moreover, as the [district] court noted, 'concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs.' ") (citation omitted).

consistent with Rule 26(b)(1) and (2)." FED. R. CIV. P. 30(a)(2).[14] Courts typically disfavor second depositions, and absent a showing of need or good reason, a court generally will not require a deponent to appear for a second deposition.[15] "[T]he primary focus in determining whether to grant leave to reopen [a deposition] is . . . whether the questioning at a second deposition would be unreasonably cumulative and whether there was a fair examination of [the witness] at his previous deposition." *Kleppinger*, 283 F.R.D. at 335. The granting or denying of additional depositions is within the discretion of the Court.[16]

### B.   Defendants Had Ample Opportunity to Obtain the Information Sought and Did Not Take Reasonable Steps to Avoid Imposing Undue Burden and Expense on Dr. Huddleston and Plaintiffs.

As noted above, under Rule 45(d)(1), Defendants were **required** to "take reasonable steps to avoid imposing undue burden or expense" on Dr. Huddleston. FED. R. CIV. P. 45(d)(1). Moreover, the Court has the discretion to limit a party's discovery if that party has had an "ample opportunity" to obtain the discovery sought. FED. R. CIV. P. 26(b)(2)(C)(ii). *See also* FED. R. CIV. P. 30(a)(2) (stating that a court can deny leave to take a second deposition of the same witness if granting leave is not "consistent with Rule 26(b)(1) and (2)").

---

[14] *See also Kleppinger v. Texas Dept. of Transp.*, 283 F.R.D. 330, 332 (S.D. Tex. 2012); *York v. Tropic Air, Ltd.*, CIV.A. V-10-55, 2011 WL 5827299, at *1 (S.D. Tex. Nov. 17, 2011); *Chevron U.S.A. Inc. v. Aker Mar., Inc.*, CIV.A. 03-2027, 2007 WL 1558710, at *1 (E.D. La. May 30, 2007); *Fietz v. Southland Nat. Ins. Co.*, CIVA 05-0064, 2007 WL 1068486, at *2 (W.D. La. Apr. 5, 2007) ("Leave of court is conditioned on the necessity of the deposition in light of [Rule] 26(b)(2) . . .").

[15] *See Kleppinger*, 283 F.R.D. at 336 n. 7 (noting that district courts regularly utilize a "good cause" standard when determining whether to reopen or retake a deposition) (citing cases); *Couch v. Wan*, CV F 08-1621 LJO DLB, 2012 WL 4433470, at *3 (E.D. Cal. Sept. 24, 2012) ("Without a showing of need or good reason, courts generally will not require a deponent's reopened deposition. Reopened depositions are disfavored, except in certain circumstances, such as, long passage of time with new evidence or new theories added to the complaint.") (internal citation omitted); *Cuthbertson v. Excel Industries, Inc.*, 179 F.R.D. 599, 604–05 (D. Kan. 1998); *Graebner v. James River Corp.*, 130 F.R.D. 440, 441 (N.D. Cal. 1989).

[16] *See York*, 2011 WL 5827299, at *1; *Seymore*, 2007 WL 101818, at *1–2; *Couch*, 2012 WL 4433470, at *3.

Neither Defendants nor their counsel have taken reasonable steps to avoid imposing undue burden or expense on Dr. Huddleston. As the Special Master noted during the August 19 status conference, Defendants could have (i) issued their own subpoena to Dr. Huddleston,[17] (ii) used the rest of their allotted time to question Dr. Huddleston,[18] or (iii) called the Special Master during the deposition to resolve the issue.[19] They chose to do none of those things. Dr. Huddleston and Plaintiffs should not be unduly burdened because Defendants failed to take the appropriate actions to protect their interests.

Defense counsels' excuses for their non-action are not persuasive. Their justification for not subpoenaing Dr. Huddleston was that "the plaintiffs noticed his deposition" and Defendants did not issue their own subpoena because they "were trying to be cooperative." **Ex. 2** (8/19/16 Transcript) at 7:23 – 8:7. Mr. Harburg also tried to argue that Defendants did not have enough time to subpoena Dr. Huddleston before his deposition,[20] but such argument is without merit, as the Special Master explained:

> Mr. Harburg, I mean, I don't want you to use the fact that we talked about it on Monday as that that somehow changed – that this was some novel idea that I came up with or some procedural device that was not available to the defendants before.

---

[17]   **Ex. 2** (8/19/16 Transcript) at 8:8-10, 8:19 – 9:23, 12:23 -13:1, 13:12-18 ("[It] seems to me you're kind of tying your own hands behind your back with not being more aggressive with taking the discover [sic] that you need. I think this is the second or third time we've talked about these treating-physician issues, and each time I don't think you-all have issued your own subpoena and haven't insisted on it being complied with."), 13:19 – 14:1, 32:22-24 ("There's – there's the appropriate way to handle it, which is to just issue a subpoena, and you-all did not do that."), 32:25 – 33:17.

[18]   **Ex. 2** (8/19/16 Transcript) at 12:16-19 ("But I think you should have just charged ahead and done your deposition on Monday like we talked about at the last status conference. And if you need the time, use the time."), 13:1-4, 22:7-18.

[19]   **Ex. 2** (8/19/16 Transcript) at 12:20-22, 13:5-11, 19:3-5, 21:10-15 (". . . I don't understand how something like this could have even occurred on Monday, specifically when I didn't even receive a phone call. I mean, if the doctor is there and you have an agreement to split time . . ."), 33:9-17 ("Where we're at right now, it seems to me that you – that, you know, your client was hamstrung because of an inability to serve a subpoena or reach out to the Special Master.").

[20]   *Id*. at 14:6-19, 16:1-3.

What we talked about on Monday was simply me reflecting back to you that in just a generic circumstance of where the plaintiff has a nonretained expert witness that is outside subpoena range – outside trial subpoena range of the Court and – and the plaintiff were to arrange for that deposition, if the defendant is going to have any complaint that there's not enough time or that the defendant did not get enough information from that witness, if you're going to complain about that, issuing a subpoena is – is the way to protect yourself, particularly in a circumstance like this where your client is urging a motion for continuance on the Court and has other concerns with the trials moving forward.  Those are – those are all legal arguments that you should make and be explored.

But it just – I mean, really, my remark on Monday was – was a – was really a question of helping me understand why you had not protected your client by serving a subpoena to ensure that the witness showed up and to ensure that you had the full power of the Court behind you so that you don't get a last-minute schedule change, so that you don't get a witness not – walking out of the deposition or not giving you enough time to do your job, in your view, which apparently happened on Monday, or not complying with the duces tecum part of the deposition notice, because you've got to jump – it seems to me that you would want to have jumped through those hoops to come to the Court and complain that – that you haven't – that you haven't been able to get the witness or prepare for trial or that you've been diligent.

So all these – I was kind of surprised that you-all hadn't been serving subpoenas on these nonparties the entire time to ensure that you're – you're protected.

So nothing changed on Monday other than this is now the second circumstance in one week where you've got a nonretained expert with no subpoena served on him – I think both these gentlemen were doctors – and you're complaining about the ability to sit them down, have them comply with the duces tecum, and give you enough time to conduct your examination.

*Id.* at 16:4 – 17:25.

Similarly, when asked why defense counsel did not simply proceed with the deposition on August 15, Mr. Quattlebaum failed to provide any legitimate justification:

SPECIAL MASTER: So, Mr. Quattlebaum, you were there.  What prevented you from just telling Mr. Lanier, You're taking advantage of the process.  I'm moving ahead and Mr. Conner and I are going to take our deposition and use our time, and if you don't want to, that's fine, and if the doctor needs to stay longer than four hours, then he'll just have to stay longer than

11

> four hours?  What prevented you from being able to just move forward and
> do what you-all needed to do?
>
> MR. QUATTLEBAUM:  I don't guess anything prevented it other than Mr.
> Lanier said he wanted his two hours.

*Id.* at 22:7-18.  And defense counsel provided absolutely no explanation as to why they did not call the Special Master from the deposition to resolve the dispute.  **Ex. 2** (8/19/16 Transcript).

Moreover, the record is clear that defense counsel had "ample opportunity" to question Dr. Huddleston thoroughly in his deposition.  Defense counsel questioned him for 90 minutes on a wide variety of topics (*see infra* at § II.C).  They had an opportunity to question Dr. Huddleston for 30 additional minutes, yet they made a considered and deliberate decision not to do so.  **Ex. 2** (8/19/16 Transcript) at 5:7-11, 22:7-18.  Instead, on their own accord and in their sole discretion, defense counsel adjourned the deposition of Dr. Huddleston without availing themselves of the opportunity for further questioning.  *Id.* at 5:12-13, 22:7-18; *see also* **Ex. 3** (Huddleston Dep.) at 115:10 – 116:1.  That they now regret this decision is no justification for a second deposition.  *See C & F Packing Co., Inc. v. Doskocil Companies, Inc.*, 126 F.R.D. 662, 674 (N.D. Ill. 1989) ("C & F was given every opportunity to proceed with the Smoak deposition, and it chose to forego continuation of that deposition.  C & F had its chance, and it is now in no position to maintain that after unilaterally terminating the deposition it has a right to continue the deposition at a later date.  C & F has knowingly and deliberately waived the continuation of the deposition.").[21]  Even if the burden of a second deposition of Dr. Huddleston was

---

[21] *See also Mitchell v. U. of Louisiana System*, CIV.A. 13-820-JWD, 2015 WL 1540532, at *12 (M.D. La. Apr. 7, 2015) (denying defendant's request to retake the plaintiff's deposition; "That the Defendant missed the opportunity to question [p]laintiff at her deposition on written discovery responses is the [d]efendant's own doing."); *Chevron*, 2007 WL 1558710, at *1 ("Plaintiff has had a full opportunity to depose Besier about the issues it now seeks to question her about again.  Requiring Besier to be deposed again would be unreasonably cumulative and duplicative, particularly when plaintiff has already had ample opportunity in this case to obtain the information it seeks. . ."); *Fietz*, 2007 WL 1068486, at *2–3 (W.D. La. Apr. 5, 2007) (denying request for a second deposition, noting that "Southland could have questioned Halter and Fietz more in depth in the first deposition"); *Abdo v. Edison Chouest Offshore,*

minimal, which it is not (*see infra* at § II.C), the fact that Defendants had "ample opportunity" to obtain the information they now seek justifies quashing the Subpoena and entering a protective order preventing a second deposition of Dr. Huddleston. *See Seymore*, 2007 WL 101818, at *1–2; *Mitchell*, 2015 WL 1540532, at *12; *Chevron*, 2007 WL 1558710, at *1.

### C.   A Second Deposition of Dr. Huddleston Would Be Unreasonably Duplicative and Unduly Burdensome.

As noted above, Rule 45(d)(3)(A)(iv) requires the Court to quash or modify a subpoena that "subjects a person to undue burden."   FED. R. CIV. P. 45(d)(3)(A)(iv). Similarly, Rule 26 requires the Court to limit discovery that is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive" and provides that the Court may issue a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . ." FED. R. CIV. P. 26(b)(2)(C)(i) & (c)(1).   *See also* FED. R. CIV. P. 30(a)(2)

---

*L.L.C.*, CIV.A. 02-512, 2003 WL 396350, at *1 (E.D. La. Feb. 19, 2003) (denying plaintiff's request to re-depose third-party witness because, among other reasons, "the party seeking his redeposition has already had ample opportunity in the action to obtain the information sought . . ."); *Lowery v. Noble Drilling Corp.*, CIV. A. 96-3968, 1997 WL 675328, at *1 (E.D. La. Oct. 29, 1997) ("Defendant offers no persuasive reason why it could not have completed its examination of plaintiff concerning the diary at the time of plaintiff's first deposition."); *Misc. Dkt. Matter No. 1*, 197 F.3d at 926–27 (district court did not abuse its discretion quashing subpoena on undue burden grounds where "appellants had the opportunity to ask questions concerning harassment and nonharassment matters pertaining to the Florida case at the Colorado deposition, but did not do so"); *Couch*, 2012 WL 4433470, at *4 ("Officers Couch and Jimenez fail to justify the need for a three-hour reopened deposition, especially considering that they deposed Lt. Gross originally for only two hours."); *E.E.O.C. v. Honda of Am. Mfg., Inc.*, 2:06-CV-0233, 2008 WL 440437, at *7 (S.D. Ohio Feb. 13, 2008) ("Consequently, the Court believes that Ms. Ways had ample opportunity to obtain these documents directly from Ms. McPherson prior to her deposition.  Further, it would have been a simple matter for the deposition subpoena to have included a *duces tecum* in order to insure that Ms. McPherson had not withheld any documents from production. Having failed to take those steps to prevent exactly the situation which occurred here, Ms. Ways cannot reasonably be heard to complain that she cannot take a second deposition of the same witness, especially when Honda bears no responsibility for Ms. Ways' failure to obtain these documents prior to Ms. McPherson's deposition."); *In Re: Ford Motor Co. Crown Victoria Police Interceptor Products Liability Litigation*, 102CV15000, 2003 WL 22331285, at *2 (N.D. Ohio May 2, 2003) ("Plaintiffs could have continued the deposition for another full day at that point if they had other relevant, non-privileged information that they thought could be obtained from Ms. Kozlowski.  They chose not to do so.").

(stating that a court can deny leave to take a second deposition of the same witness if granting leave is not "consistent with Rule 26(b)(1) and (2)").  Here, the burdens of a second deposition of Dr. Huddleston, a nonparty, outweigh any benefit likely to be obtained thereby.  Indeed, Defendants have provided no legitimate explanation of the expected benefit of a second deposition other than to rectify the mistakes of their counsel.  **Ex. 2** (8/19/16 Transcript).

Defense counsel explicitly agreed to the rules of the deposition (*i.e.*, that each side would have two hours with the witness) with full knowledge of the circumstances (*i.e.*, that Plaintiffs' counsel was likely not to ask any questions).   **Ex. 1** (8/15/16 Transcript) at 16:22-25; **Ex. 3** (Huddleston Dep.) at 5:2-5, 20:23 – 21:1; **Ex. 2** (8/19/16 Transcript) at 4:7-10, 8:5-7, 24:3-8, 24:12-21.  They had ample opportunity to fully depose Dr. Huddleston (who was merely the implanting surgeon and not a revising surgeon) in the two-hour time frame they were allotted.  Indeed, in the 90 minutes they took to examine Dr. Huddleston, defense counsel questioned him about a wide variety of topics:

- his conversations with Plaintiffs' counsel;
- the documents he brought with him to the deposition;
- the information and literature he provided to Plaintiff Weiser;
- when he became aware of problems with metal-on-metal hips;
- when he became aware of ALVAL;
- communications he received from DePuy regarding ASR hip implants;
- whether he was willing to testify live at trial;
- his experience implanting and revising hip replacements;
- his experience with metal-on-poly hip implants;
- his experience with BHR metal-on-metal surface replacement hips;
- his reliance on medical literature;
- his experience with ASR hip implants;
- the reasons he chose to use metal-on-metal hip implants;

14

- the differences between ASR and Pinnacle hip implants;

- how many Pinnacle Ultamet hip implants he has revised and the reasons for those revisions;

- the marketing he received from DePuy, including from sales representatives and at meetings and lectures;

- how he interpreted DePuy's marketing representations;

- the history of metal-on-poly hip implants and the problems associated with them, including, but not limited to, the problems of osteolysis;

- the need for innovation in hip implant technology;

- his knowledge of the risks associated with metal-on-metal hips, and the extent of that knowledge at the time he implanted Plaintiff Weiser;

- his attendance at industry conferences;

- his knowledge regarding the McKee-Farrar and Metasul hip implants;

- his knowledge regarding the risks of corrosion in total hip replacements;

- the benefits of modularity in hip implants;

- whether he practices evidence-based medicine;

- whether he reads the IFUs that come with medical devices, and specifically, whether he read the IFU that came with the Pinnacle Ultamet;

- Plaintiff Weiser's symptoms prior to receiving his hip implant;

- the warnings and information he provided to Plaintiff Weiser regarding hip replacement; and

- whether he recommended metal-on-metal to Plaintiff Weiser.

Ex. 3 (Huddleston Dep.) at 5:12 – 113:5. Defense counsel appears to have covered every possible relevant topic, and with 30 minutes to spare. That they chose to waste most of their time on questions that had nothing to do with Dr. Huddleston's implantation of the Pinnacle Ultamet into Plaintiff Weiser is no fault of Dr. Huddleston or Plaintiffs. Nor is Defendants' decision to forego the remaining 30 minutes of their time. Defendants

15

certainly have not identified what additional information they need from Dr. Huddleston that they were not able to obtain in his first deposition. *See Mitchell*, 2015 WL 1540532, at *12 ("Defendant has not identified any subject area or topics it was deprived of exploring at Plaintiff's deposition even if it had been provided the recordings prior to the deposition."); *Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 244 F.3d 189, 193 (1st Cir. 2001) ("Signal has not shown that the information sought from Whelan, Dancwicz or Cohen would be anything but cumulative or duplicative. Therefore, it would be an 'undue burden' on GEAE, a non-party, to permit such a 'fishing expedition.' "). Allowing a second deposition of Dr. Huddleston just so Defendants can ask the same questions and receive the same answers is a waste of time and resources. *See Chevron*, 2007 WL 1558710, at *1 ("Plaintiff has had a full opportunity to depose Besier about the issues it now seeks to question her about again. Requiring Besier to be deposed again would be unreasonably cumulative and duplicative, particularly when plaintiff has already had ample opportunity in this case to obtain the information it seeks . . ."); *Libertarian Party of Ohio v. Husted*, 302 F.R.D. 472, 476–77 (S.D. Ohio 2014) ("[O]nce the deposing party has had a full opportunity to question a witness, doing that for a second time is presumptively duplicative and it is appropriate to ask the requesting party to explain what else might be asked that has not already been covered adequately in the first proceeding."); *MMG Ins. Co. v. Samsung Elecs. Am., Inc.*, 293 F.R.D. 58, 64 (D.N.H. 2013) ("MMG had ample opportunity to question him about the testing then, so allowing a second deposition for that purpose would be unreasonably duplicative.").

Moreover, the burdens a second deposition would impose on Dr. Huddleston and Plaintiffs are manifest. Dr. Huddleston is a practicing surgeon who would have to, once again, set aside time from his busy work schedule to appear for a second deposition. This is clearly a personal and professional inconvenience, especially in light of the fact that Defendants failed to fully utilize the time he had previously set aside for his first deposition. Plaintiffs will also be inconvenienced by a second deposition. Trial begins in

16

a few weeks.  The parties are in the midst of numerous other depositions and additional discovery to prepare for trial.  A second deposition of Dr. Huddleston would require Plaintiffs' counsel to set aside valuable time to fly to California, attend the deposition, and ask any necessary questions on re-direct to address whatever "new" topics are addressed by defense counsel during the deposition.  The substantial time and expense that would be incurred by Dr. Huddleston and Plaintiffs' counsel is all the more unreasonable in light of the fact that they have already incurred that burden and expense once.

Defendants have communicated no valid reason for the second deposition of Dr. Huddleston, who was extensively interrogated during his first deposition. **Ex. 2** (8/19/16 Transcript); **Ex. 3** (Huddleston Dep.).  Moreover, no new information has come to light that would require additional inquiry of Dr. Huddleston.  *See Chevron*, 2007 WL 1558710, at *1 ("There is nothing 'new' that would prompt Besier's re-deposition.").  Thus, an additional deposition of Dr. Huddleston would be unreasonably cumulative, duplicative, and burdensome, and the burden and expense of such a deposition greatly outweighs any potential benefit.  *See id.*[22]  A protective order is warranted to protect Dr.

---

[22] *See also Fietz*, 2007 WL 1068486, at *2–3; *Abdo*, 2003 WL 396350, at *1 (denying plaintiff's request to re-depose third-party witness because, among other reasons, "it would be unreasonably duplicative" and "the burden of the proposed redeposition (particularly on the deponent, who is *not* a party to this lawsuit) outweighs its likely benefit . . ."); *Lowery*, 1997 WL 675328, at *1–2; *Couch*, 2012 WL 4433470, at *4 ("Lt. Gross' reopened deposition would be unreasonably cumulative or duplicative, and Officers Couch and Jimenez fail to demonstrate an absence of ample opportunity or likely benefit to warrant reopening Lt. Gross' deposition."); *E.E.O.C.*, 2008 WL 440437, at *7 ("The Court is not persuaded that there would be any benefit to the parties from an additional deposition and concludes that any benefit would be outweighed by the cost of that proceeding."); *In re Polyester Staple Antitrust Litig.*, MDL NO. 3:03 CV 1516, 2007 WL 1232223, at *2 (W.D.N.C. Apr. 25, 2007) ("Directing Netzel to appear and submit to examination once more, for the sole purpose of allowing Hoechst Celanese to inquire about a topic that has already been fully exhausted, would amount to undue burden."); *Ford Motor*, 2003 WL 22331285, at *2 ("[T]he Court finds that the Plaintiffs had ample opportunity to obtain information from Ms. Kozlowski during the first deposition, and absent any explanation of why additional information is required, it appears to this Court that the burden or expense of an additional deposition outweighs its likely benefit.").

Huddleston from the annoyance, oppression, and undue burden and expense of being deposed twice in the same case.  Fᴇᴅ. R. Cɪᴠ. P. 26(c)(1).[23]

## III.        REQUEST FOR EXPEDITED BRIEFING SCHEDULE & CONSIDERATION

Under the Local Rules, Defendants ordinarily would have 21 days to respond to this Motion.  However, Defendants have noticed Dr. Huddleston's second deposition for September 12, 2016.  In light of the imminent approach of this deposition, Plaintiffs respectfully request that the Court set an expedited briefing schedule and hear this matter on an expedited basis so that a protective order may issue prior to the deposition date noticed by Defendants.

## IV.CONCLUSION

For the reasons stated herein, Plaintiffs respectfully request that the Court expedite consideration of their Motion, quash the Subpoena and Notice of Deposition, and enter a protective order preventing Defendants from re-deposing Dr. Huddleston in this case.

September 2, 2016

Respectfully submitted,

*Plaintiffs' Co-Lead Counsel:*
By: /s/ W. Mark Lanier
W. Mark Lanier
THE LANIER LAW FIRM
6810 FM 1960 Rd W
Houston, TX 77069-3804
Telephone: (713) 659-5200
Fax: (713) 659-2204
E-mail: wml@lanierlawfirm.com

---

[23]   *See also* Fᴇᴅ. R. Cɪᴠ. P. 26(b)(2)(C); Fᴇᴅ. R. Cɪᴠ. P. 45(d)(3)(A); Fᴇᴅ. R. Cɪᴠ. P. 30(a)(2); *Kleppinger*, 283 F.R.D. at 335; *Seymore*, 2007 WL 101818, at *1–2; *Graebner*, 130 F.R.D. at 442.

Larry Boyd
Wayne Fisher
Justin Presnal
FISHER, BOYD, JOHNSON
  & HUGUENARD, LLP
2777 Allen Parkway, Suite 1400
Houston, Texas 77019
Telephone: (713) 400-4000
Fax: (713) 400-4050
E-mail: wfisher@fisherboyd.com
E-mail: justinp@fisherboyd.com

*Plaintiffs' Executive Committee on behalf of the
Plaintiffs' Steering Committee:*

Richard J. Arsenault
NEBLETT, BEARD & ARSENAULT
2220 Bonaventure Court
P.O. Box 1190
Alexandria, Louisiana 71301
Telephone: (800) 256-1050
Fax: (318) 561-2591
E-mail: rarsenault@nbalawfirm.com


Jayne Conroy
SIMMONS HANLY CONROY
112 Madison Avenue
New York, NY 10016
Telephone: (212) 784-6402
Fax: (212) 213-5949
E-mail: jconroy@simmonsfirm.com

19

**CERTIFICATE OF CONFERENCE**

Plaintiffs' counsel conferred with counsel for Defendants regarding this matter during a telephonic status conference on August 19, 2016.  Defendants oppose the motion.

*/s/ Justin Presnal*

**CERTIFICATE OF SERVICE**

I certify that the foregoing instrument was served on counsel for the Defendants by the Court's ECF system and also by electronic mail on September 2, 2016.

*/s/ Justin Presnal*